IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | |
| ) | 1:11cr512 (LMB) |
| ) | 1:14cv425(LMB) |
| KELVIN DWAIN VAN HOOK, JR., ) | |
| ) | |
| Movant. ) | |

MEMORANDUM OPINION

Before the Court is Kelvin Dwain Van Hook, Jr.'s ("Van Hook"[1] or "movant") pro se Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 [Dkt. No. 128] ("Motion to Vacate"), in which he argues that his sentence was imposed in an unconstitutional manner and that he received constitutionally ineffective assistance from his defense counsel, Assistant Federal Public Defender Kevin Brehm ("Brehm"). On the sentencing issue Van Hook argues that the Court's determination that he had committed three separate felony drug offenses, which rendered him eligible for sentencing under the enhancements required by the Armed Career Criminal Act ("ACCA") and led to his 180-month sentence, should have been, under Alleyne v. United States, 133 S.Ct. 2151 (2013), submitted to a jury rather than being found by the Court. On the second point, Van Hook argues that Brehm failed to interview Van Hook's co-defendant Amanda Coles ("Coles") before trial and that during cross-examination Brehm failed to ask Coles questions which, Van Hook asserts, would have established that she set up Van Hook. Van Hook argues that such testimony would have

---

[1] Previous cases erroneously list Van Hook's surname as one word. See United States v. Vanhook, 495 F. App'x 308 (4th Cir. 2012). On May 19, 2014 the judgment in the present case was amended to reflect the correct spelling. Amended Judgment [Dkt. No. 131].

created reasonable doubt that he knowingly and intentionally possessed the firearm upon which his conviction was based. The United States has responded to the Motion to Vacate and provided an affidavit from Brehm. Van Hook has replied to the United States' opposition. Having reviewed the entire record, the Court finds no merit to Van Hook's motion, which will be dismissed without the need for an evidentiary hearing.

I. BACKGROUND

On October 25, 2011, a federal grand jury returned a three-count indictment charging Van Hook in Count 1 with possession of a firearm after having been convicted of a crime punishable by imprisonment for more than one year, in violation of 18 U.S.C. § 922(g)(1). Indictment [Dkt. No. 15] at 1-2. Coles was charged in Count 2 with knowingly making a false statement in connection with the purchase of the firearm, and in Count 3 with giving the firearm to Van Hook with reasonable cause to believe that Van Hook was a felon. Id. at 3-4. Van Hook and Coles were tried together in December of 2012. Motion to Vacate at 8.[2]

At trial, the government argued that the defendants were involved in a straw purchase of a firearm. More specifically, it argued and presented evidence that Coles visited a firearms dealer on September 26, 2011. Id. at 9. During her visit, the shopkeeper became suspicious that Coles was attempting to purchase a firearm for another person, at least in part because of the type of firearm that Coles wanted to buy, that she parked her car on the opposite side of the parking lot, and that the shopkeeper saw a man sitting in that car. Id. The shopkeeper told Coles that she would have to return later to pick up the firearm, and called the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to report his suspicions. Id. After the ATF established

---

[2] Van Hook's motion contains both a form AO-243 and a "Memorandum of Law," which were submitted together but were not consecutively numbered. For ease of reference, citations are to the pagination applied by the electric filing system.

2

surveillance around the store, the shopkeeper notified Coles that she could return to pick up the firearm. Id. Coles returned to the store and was allowed to purchase the firearm. Id. at 10. She carried the firearm to her car in a white plastic bag. Id. at 10.

When Coles arrived at the store to pick up the firearm, Van Hook was seen in the parking lot of a 7-11 convenience store across the street from the gun store. Id.; Government's Answer to Petitioner's Motion [Dkt. No. 146] ("Gov't Opp'n") at 3. After Coles returned to her car with the firearm, she drove to the 7-11 where Van Hook was waiting. Motion to Vacate at 10. "Van Hook leaned inside her car, and retrieved a white plastic bag." Id. Van Hook was arrested after returning to his vehicle. Id. The white plastic bag that he retrieved was found to contain the firearm that Coles had just purchased. Id.

Both defendants argued to the jury that Coles had purchased the gun for self-protection and that there was never any intent for Van Hook to possess the firearm, which Van Hook accidentally possessed when he picked up the bag containing the firearm by mistake. See id. at 10-11. Coles testified that she had purchased the firearm for herself for protection, and that she instead intended to give Van Hook a second white plastic bag which contained watches belonging to Van Hook. Id. at 10. In contrast to Coles's testimony, ATF Special Agent Jeffrey Grabman ("Grabman") testified that Coles made a post-Miranda statement admitting that she knew that Van Hook was a convicted felon who was not permitted to possess a firearm, She also admitted giving the firearm to Van Hook and that Van Hook was going to give the firearm to a third person. Id.

Van Hook testified at trial that he did not know that the bag that he picked up contained a firearm and that he thought he had merely retrieved his watches. Id. at 11. Grabman also contradicted Van Hook's version of the evidence, testifying that Van Hook made a post-Miranda

3

admission that he was a convicted felon and that he had a handgun in the white plastic bag. Id. at 11. Both Coles and Van Hook testified that they did not make any statements to Grabman. Id. at 10-11. The jury convicted both defendants on all counts. Id. at 8.

Coles was sentenced to 21 months of incarceration. Id. Van Hook was sentenced to 180 months of incarceration under the ACCA, which sets a mandatory minimum fifteen year sentence for persons with three previous "violent felony or serious drug offense[s], or both, committed on occasions different from one another." 18 U.S.C. 924(e)(1). Van Hook had previously been convicted in the Circuit Court of Prince William County, Virginia three times, in three separate cases, of distributing cocaine in violation of Va. Code Ann. § 18.2-248.[3] At sentencing, Van Hook argued unsuccessfully that the 180-month sentence was inappropriate because, under Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the jury needed to find all of the elements under § 924(e)(1), including that the three previous offenses were "separate" offenses, beyond a reasonable doubt. Id.

Van Hook, then still represented by the Office of the Federal Public Defender, appealed his sentence to the United States Court of Appeals for the Fourth Circuit, repeating his argument that the "separateness" of his three prior offenses was required to be submitted to the jury. Id. The Fourth Circuit rejected that argument, finding that it had "previously concluded that a sentencing judge may undertake the ACCA's 'separateness' inquiry." United States v. Vanhook, 495 F. App'x 308, 309 (4th Cir. 2012).

Since the decision by the Fourth Circuit, the United States Supreme Court decided Alleyne v. United States, which found that "[a]ny fact that, by law, increases the penalty for a

---

[3] Commonwealth v. Vanhook, Case No. CR05057474-00 (stating offense date of Sept. 22, 2003); Commonwealth v. Vanhook, Case No. CR05057476-00 (stating offense date of Sept. 16, 2003); Commonwealth v. Vanhook, Case No. CR05057476-00 (stating offense date of Sept. 3, 2003). See also Motion to Vacate at 12.

crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." 133 S.Ct. 2151, 2155 (2013). Van Hook, now pro se, argues that Alleyne vindicates his previous arguments, and therefore requires that his sentence be vacated and a new sentence imposed. Motion to Vacate at 23.

Van Hook further argues that Alleyne is not the only thing that has changed since the Fourth Circuit rejected his appeal. With his Motion to Vacate, Van Hook also submits an e-mail and letter from Coles, in which she states for the first time that she purchased the firearm at issue in an effort to "set [Van Hook] up" as revenge for Van Hook wanting her to seek an abortion. See Motion to Vacate Ex. 1 ("Coles E-mail"); Motion to Vacate Ex. 2 ("Coles Letter"). Van Hook argues that Brehm, his trial counsel, was constitutionally ineffective in failing to investigate the possibility that Coles was seeking vengeance and by not adequately questioning Coles regarding that possibility at trial. Motion to Vacate at 28-30. Accordingly, Van Hook seeks to have his conviction set aside, and to receive a new trial "in which Coles is called to testify in detail on her admitted scheme to trick him into possessing a firearm." Id. at 30.

## II. DISCUSSION

### A. Standard of Review

A motion under 28 U.S.C. § 2255 provides for collateral attack on a conviction or sentence that was imposed in violation of the United States Constitution or laws, where the court lacked jurisdiction to impose the sentence, where the sentence was in excess of the maximum authorized, or where the sentence or conviction is otherwise subject to collateral attack. To prevail, a movant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. Vanater v. Boles, 377 F.2d 898, 900 (4th Cir. 1967). Relief under § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is

therefore reserved for situations in which failing to grant relief would otherwise "inherently result[] in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (quoting Hill v. United States, 368 U.S. 442, 428 (1962)). Moreover, a motion pursuant to § 2255 "may not do service for an appeal," and claims that have been waived by a failure to appeal are therefore procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67 (1982); United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994) (applying standard to unappealed guilty pleas). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel, which can be raised in a collateral attack on his conviction or sentence. See United States v. Martinez, 136 F.3d 972, 979 (4th Cir. 1998); United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

### B. Applicability of Alleyne

"New rules of constitutional criminal procedural 'are generally not applied retroactively on collateral review.'" United States v. Sanders, 247 F.3d 139, 146 (4th Cir. 2001) (quoting United States v. Mandanici, 205 F.3d 519, 527 (2d. Cir. 2000)). What that principle means is that new rules of constitutional criminal procedure announced by the Supreme Court may not be applied to cases which are already final unless the Supreme Court specifically states that the decision will apply retroactively. Sanders at 146 n.4. "[A] new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive." Tyler v. Cain, 533 U.S. 656, 663 (2001).

Van Hook's conviction was already final when Alleyne was decided on June 17, 2013.[4] Accordingly, he may only rely on Alleyne for relief if the Supreme Court made Alleyne apply retroactively to cases on collateral review. The Supreme Court has not made Alleyne apply retroactively, see Alleyne, 133 S.Ct. at 2151, and the Fourth Circuit has recognized, in an unpublished per curiam opinion, that "Alleyne has not been made retroactively applicable to cases on collateral review." United States v. Stewart, 540 F. App'x 171, 172 n.* (4th Cir. 2013). In addition, the Supreme Court has made clear that Alleyne merely extended the reasoning of Apprendi v. New Jersey, 530 U.S. 466 (2000). "Every circuit court to address whether Apprendi applies retroactively . . . has held that it does not." Hughes v. United States, 770 F.3d 814, 818 (9th Cir. 2014) (collecting cases). For these reasons, Van Hook cannot receive a new sentence based on Alleyne, and this claim will be dismissed.

C. **Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel Van Hook must satisfy the two-pronged test of Strickland v. Washington, 466 U.S. 668 (1984), which requires showing "that counsel's representation fell below an objective standard of reasonableness" and that the defendant suffered prejudice from that that substandard performance. Id. at 687-88. Because it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence" and because a wide range of legitimate defense strategies are possible in a given case, "scrutiny of counsel's performance must be highly deferential." Id. at 689. "Once counsel conducts a reasonable investigation of law and facts in a particular case, his strategic decisions are virtually unchallengeable." Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009). To show prejudice, Van Hook must prove "that there is a reasonable probability that, but for counsel's

---

[4] Van Hook's Petition for a Writ of Certiorari was denied on March 25, 2013, and rehearing was denied on May 20, 2013. Motion to Vacate at 9.

7

unprofessional errors, the result of the proceeding would have been different." Id.; see also id. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

Van Hook has not made the requisite showing that Brehm's representation fell below an objective standard of reasonableness. Van Hook argues that Brehm took two actions which fell below the standard: not conducting a pretrial investigation into Coles's motive and not cross-examining her regarding her motive during trial. Motion to Vacate at 28-30. To the extent that Van Hook argues that Brehm should have interviewed Coles to determine her motive, Brehm has averred that he was not permitted to communicate directly with Ms. Coles before trial because she was represented by attorney Chong C. Park ("Park"). Affidavit of Kevin Brehm [Dkt. No. 145] ("Brehm Affidavit") ¶ 4; Virginia State Bar Professional Guidelines R. 4.2. Brehm asked Park if he could speak with Coles, and Park declined to grant that permission. Brehm Affidavit ¶ 4. At that point, there was no further investigation which Brehm could pursue under the ethical rules governing the legal profession and, therefore, his conduct was not deficient.

At trial, the common defense strategy for both Coles and Van Hook was to argue that Coles purchased the firearm for herself and that Van Hook took the bag in which the firearm was placed by mistake, therefore not knowingly or intentionally possessing the weapon. Id. ¶ 5; Motion to Vacate at 10-11. "[T]hat was the trial defense discussed with Mr. Van Hook prior to the commencement of trial." Brehm Affidavit ¶ 5. Because Coles's testimony was consistent with that theory, "there was no reason to cross-examine Ms. Coles regarding any possible motive she might have had to 'entrap' or 'set up' Mr. Van Hook and orchestrate the situation so he

would be found in possession of a firearm by the police."[5] Id. Accordingly, Brehm's strategic decision to limit his cross-examination of Coles to the theory which had been discussed with, and agreed to by Van Hook before trial, did not fall below the objective standard of reasonableness.

### III. CONCLUSION

For the reasons stated above, Van Hook's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 [Dkt. No. 128] will be dismissed by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 16 day of March, 2015.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[5] Although determination of Coles's credibility is not necessary to resolve Van Hook's motion, it is noted that Coles's new contention strains credulity. In particular, her two vastly different versions of her actions and motivations render the account in her e-mail and letter, neither written under oath, completely unbelievable.